# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made effective as of July 22, 2011 (the "Effective Date"), by Blue Cross and Blue Shield Association, a not-for-profit corporation organized and existing under the laws of the State of Illinois, on the one hand, and UHS of Delaware, Inc., a corporation organized and existing under the laws of the State of Delaware; UHS of Texoma, Inc., a corporation organized and existing under the laws of the State of Delaware; TexomaCare, a corporation organized and existing under the laws of the State of Texas; and Universal Health Services, Inc., a corporation organized and existing under the laws of the State of Delaware, on the other hand. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Definitions.** As used in this Agreement, the following capitalized terms have the following meanings.

   (a) **BCBSA.** The term "BCBSA" means Blue Cross and Blue Shield Association, a not-for-profit corporation organized and existing under the laws of the State of Illinois.

   (b) **Claims.** The term "Claims" means all liabilities and obligations arising in whole or in part out of or relating in any way to the Texoma Cross in the Color Blue or any allegations in the Lawsuit or TTAB Proceedings, existing as of the Effective Date, regardless of whether those liabilities or obligations are known, unknown, or matured.

   (c) **Color Blue.** The term "Color Blue" means blue in color and any color with the commercial impression of blue, such as a shade of blue.

   (d) **Defendants and UHS.** The terms "UHS" and "Defendants" mean the defendants, individually and collectively, UHS of Delaware, Inc., a corporation organized and existing under the laws of the State of Delaware; UHS of Texoma, Inc., a corporation organized and existing under the laws of the State of Delaware; TexomaCare, a corporation organized and existing under the laws of the State of Texas; and Universal Health Services, Inc., a corporation organized and existing under the laws of the State of Delaware.

   (e) **Effective Date.** The term "Effective Date" means the date set forth above, or if no date is specified above, the date on which all Parties have executed this Agreement.

   (f) **Lawsuit.** The term "Lawsuit" means the case titled, *Blue Cross and Blue Shield Association v. UHS of Delaware, Inc., et. al.*, Case No. CV 09 CV 7935, in the United States District Court for the Northern District of Illinois.

   (g) **Other Released Persons.** The term "Other Released Persons" means, individually and collectively, present and former agents; representatives; employees; employers; officers; directors; owners; managers, shareholders; associates; affiliates; contractors; suppliers; vendors; subcontractors; consignees; customers; franchisees; parent, subsidiary, division, sister, or otherwise related corporations; partners; joint venturers; beneficiaries; executors; administrators; trustees; attorneys; insurers; predecessors; successors; and assigns.

(h) **Parties.** The terms "Party" and "Parties" means, one, both or more parties to this Agreement, individually and collectively, as is applicable and appropriate.

(i) **Texoma Cross.** The term "Texoma Cross" means the design depicted below (including without limitation any variations or derivative designs).



(j) **Texoma Trademark Filings.** The term "Texoma Trademark Filings" means all applications to register or registrations of any marks made up of or including the Texoma Cross, including without limitation: U.S. Application Nos. 77/643,044, 77/815,214, 77/815,218, 77/815,233, and 77/815,327; and U.S. Registration No. 3,926,510.

(k) **TTAB Proceedings.** The term "TTAB Proceedings" means the following opposition proceedings before the U.S. Trademark Trial and Appeal Board: Opposition Nos. 91193105, 91195017, 91195726, 91195727, and 91196481.

(l) **UHS System.** The term "UHS System" means the acute care hospitals, behavioral health facilities, ambulatory centers, and other health care facilities owned, managed, or otherwise operated by one or more of the Defendants or a parent, subsidiary, division, or otherwise affiliated entity of one or more of the Defendants, now or in the future, including without limitation as described on the UHS website accessible at www.uhsinc.com.

2. **Texoma Cross**

    (a) **Use.**

        (1) Subject to any phase-outs expressly allowed in Section 2(b), below, UHS will not use the Texoma Cross in the Color Blue, directly or otherwise within or on behalf of the UHS System (or any facility within the UHS System). BCBSA acknowledges that none of the colors shown in Exhibit A to this Agreement is in the Color Blue, blue in color, or a color with the commercial impression of blue. BCBSA acknowledges that use of the colors in Exhibit A may appear differently in electronic mediums (for example, in different computer monitors). UHS will follow prevailing industry standards and practices for using the Texoma Cross in electronic media in such a way to maximize accurate display of the colors in Exhibit A. UHS will not, however, be responsible for inaccurate display of such colors in electronic media caused by equipment, software, or settings outside its or their reasonable control.

(2) Subject to any phase-outs expressly allowed in Section 2(b), below, UHS will not use, own, seek to register, maintain a registration of, or otherwise seek to establish proprietary rights in a trademark or service mark consisting of or including a cross in the Color Blue, directly or otherwise within or on behalf of the UHS System (or any facility within the UHS System).

(3) UHS of Delaware will amend each of the Texoma Trademark Filings to expressly exclude any claim to the Color Blue within or as part of the Texoma Cross. Additionally, any future application by UHS for registration of trademarks or service marks consisting of or including a cross will not include any claim to the Color Blue within or as part of the cross and further will expressly exclude the Color Blue within or as part of the cross. Express exclusion of the Color Blue within or as part of the Texoma Cross or any other cross will be effected by UHS using or adding one of the following statements in or to the description of the mark:

(a) "The cross in the mark is not used and will not be used in the color blue (or any colorable imitation thereof).

(b) "The cross in the mark is not used and will not be used in the color blue."

(c) "The application and any registration resulting from the application exclude the color blue within or as part of the cross in the mark."

(d) "The application and any registration resulting from the application claim no right to use the cross in the mark in the color blue."

(b) **Phase-Out.**

(1) Without limitation to any obligations or timelines specifically or expressly set forth in this Agreement, UHS will make reasonable commercial efforts to promptly transition away from using the Texoma Cross in the Color Blue to a new color. Within 30 days of the Effective Date, UHS's new orders for any types of materials, including without limitation brochures and business cards, that previously incorporated the Texoma Cross in the Color Blue, will be made so as to not include the Texoma Cross in the Color Blue. Similarly, within 30 days of the Effective Date, UHS's placements of advertising or the like that previously incorporated the Texoma Cross in the Color Blue will be made so as to not include the Texoma Cross in the Color Blue.

(2) For existing materials using, incorporating, or displaying the Texoma Cross in the Color Blue, UHS may phase out the use, incorporation, or display of such materials within the phase-out periods set-forth in Exhibit B to this Agreement, starting from the Effective Date.

(3) During these phase-out periods, the Parties will work together in good faith to undertake reasonable action to correct any instance of known actual confusion that may arise from use of the Texoma Cross in the Color Blue.

(4) Upon completion of the changes required in Sections 2(a) and 2(b)(1) - 2(b)(3) of this Agreement, UHS shall certify completion of the changes by written notice to BCBSA.

3. **Payment**. Subject to the terms and conditions of this Agreement, and in partial consideration of the covenants and undertakings in Section 2 of this Agreement, BCBSA will pay UHS the sum of $130,000, as follows:

(a) **First Payment**. Within 10 business days after UHS fulfills its obligations to file the necessary papers to effect the Texoma Trademark Filings or within 10 business days after the Effective Date (whichever is later), BCBSA will make the first payment of $100,000 to UHS.

(b) **Second Payment**. Within 10 business days after UHS has both completed the changes required in this Section 2 and the certification in Section 2(b)(4) of this Agreement, BCBSA will make the second payment of $30,000 to UHS.

(c) **Method of Delivery**. All payments by BCBSA under this Agreement may be made by wire transfer to the account specified by UHS, or as otherwise mutually agreed by the Parties.

4. **Releases**.

(a) **General Release**.

(1) By BCBSA. BCBSA, on behalf of itself and any of its agents or representatives acting by or through it, releases each of the Defendants and their Other Released Persons from all Claims.

(2) By Defendants. Each of the Defendants, on behalf of themselves and any of their agents or representatives acting by or through each or any them, releases BCBSA and its Other Released Persons from all Claims.

(b) **Release of Unknown Claims**. Each of the Parties acknowledges it may hereafter discover Claims, further Claims (or facts relating to the Claims) now unknown or unsuspected, or different from those they believe to be true. For clarity, each of the Parties

Page 4 of 12

SETTLEMENT AGREEMENT
*CONFIDENTIAL*

31215131

nevertheless intends by this Agreement to release all Claims against each of the other Parties. Accordingly, this Agreement will remain effective as a complete release of all Claims notwithstanding the existence or later discovery of any such Claims, further Claims (or facts relating to the Claims).

(c) **No Admission of Liability**. This Agreement is a compromise and settlement of contested claims, actions and allegations relating to the Claims. It is not an admission by any of the Parties of any liability or fault relating to the Claims.

5. **Dismissal**.

(a) **Lawsuit**. Within 10 business days after the date that the amendments of the Texoma Trademark Filings are filed and effected under Section 2(a)(3), above, or within 10 business days after the Effective Date (whichever is later), BCBSA will file a stipulation of dismissal, executed by all of the Parties to the Lawsuit, providing as follows:

(1) the case is dismissed with prejudice; and

(2) BCBSA, on the one hand, and Defendants, on the other hand, bear its or their own costs and attorneys' fees.

(b) **TTAB Proceedings**. Within 10 business days after the date that the amendments of the Texoma Trademark Filings are filed and effected under Section 2(a)(3), above, or within 10 business days after the Effective Date (whichever is later), BCBSA will file stipulations for dismissal of each of the TTAB Proceedings, executed by BCBSA and UHS of Delaware, providing as follows:

(1) the case is dismissed with prejudice; and,

(2) BCBSA and UHS of Delaware bear their own costs and attorneys' fees.

6. **Costs and Attorneys' Fees**. BCBSA, on the one hand, and the Defendants, on the other hand, will bear its or their own costs and attorneys' fees incurred in connection with the Lawsuit, the TTAB Proceedings, or the negotiation, preparation or execution of this Agreement.

7. **Representations and Warranties**. Each of the Parties represents and warrants to the others as follows:

(a) It has the full power and authority to execute and perform under this Agreement—including without limitation the absence of any duty or obligation that would prevent (or be put in breach or default by) such execution, delivery, or performance;

(b) It has investigated the facts pertaining to this Agreement as it deemed necessary;

(c) It has relied upon its own judgment, belief, knowledge, and understanding, after careful consultation with its own legal counsel concerning the legal effect of this Agreement;

(d) It understands the effect of any releases in this Agreement; and,

(e) It enters into this Agreement voluntarily in the absence of any fraud, mistake, duress, coercion, or undue influence.

8. **Confidentiality.**

(a) **Non-Disclosure of Terms.** The Parties (including their employees, agents, and attorneys) must keep the fact of any payment under this Agreement and the amount of any payment under this Agreement confidential—and may not disclose any such information to any third party without the written consent of all the other Parties, except that:

(1) the Parties may disclose such payment terms of this Agreement under obligations of confidentiality to their boards of directors, attorneys, accountants, financial or tax advisors, insurers, or financial institutions, as reasonably necessary in seeking advice or for such Parties' relationships with those persons or companies;

(2) the Parties may disclose such payment terms of this Agreement to the extent required by a court or government agency or by applicable law, order, rule, or regulation, subject to the requirements of Section 8(b); and

(3) the Parties may disclose such payment terms of this Agreement to the extent reasonably necessary to enforce this Agreement, subject to the requirements of Section 8(b).

(b) **Notice of Required Disclosure.** If a Party is required by a court or similar tribunal to disclose the information required to be kept confidential under Section 8(a), above, or is required to produce this Agreement in whole or any of its terms that are to be kept confidential under Section 8(a), above, in discovery or by subpoena, it must promptly notify the other Parties in writing of this obligation and provide the other Parties sufficient time to object or file appropriate motions or requests, such as a motion for protective order; and it must undertake reasonable efforts to ensure the continued confidentiality of the information as provided in Section 8(a), above (for example, by objecting, refusing to disclose such confidential information if appropriate legal basis exists for the refusal, or seeking a protective order).

9. **Non-Disparagement.** BCBSA and UHS will not criticize or otherwise disparage each other with respect to any matters in the Lawsuit and TTAB Proceedings in official company statements or communications.

10. **Breaches.** Should a Party learn of a breach by another Party that Party will give written notice to such other Party of the breach, and such other Party will have 30 days to cure the breach.

11. **Notice.** Any and all notices and other communications required or permitted under this Agreement must be in writing, reference this Agreement, and use the contact information listed in this Section. Notice will be deemed effective on the third business day after deposit with a globally recognized commercial overnight carrier for overnight delivery, with written verification of receipt; on the tenth business day after having been sent by registered or certified mail, return receipt requested, with written verification of receipt; or on the next business day after having been sent by facsimile, with written verification of receipt, provided that a copy of such notice is also sent by registered or certified mail. Defendants also agree to accept e-mail notice, which will be treated the same as facsimile notice. Any of the Parties may change the contact information to be used for the purpose of giving notice under this Agreement by giving written notice of such change to the other Parties, as provided in this Section 10.

**BCBSA**

Blue Cross and Blue Shield Association
Attn.: General Counsel
225 North Michigan Avenue
Chicago, IL 60601
Fax: ~~312.297.5956~~ 312.297.5867

*with a copy to (which copy shall not constitute notice):*

Hanson Bridgett LLP
Attn.: Susan G. O'Neill, Esq.
Attn.: Garner K. Weng, Esq.
425 Market Street, 26th Floor
San Francisco, CA 94105
Fax: 415.541.9366

**Defendants**

Matthew Klein
Vice President and General Counsel
UHS of Delaware, Inc.
367 South Gulph Road
King of Prussia, PA 19406
Fax: 610.992.4566
E-mail: matthew.klein@uhsinc.com

*with a copy to (which copy shall not constitute notice):*

Ungaretti & Harris, LLP

Attn.: Nicholas Anaclerio, Esq.
70 West Madison Street, Suite 3500
Chicago, Illinois 60602-4224
Fax: 312.977.4405

12. **General Provisions.**

(a) **Entire Agreement; Modifications.** This Agreement constitutes the entire agreement of the Parties with respect to matters set forth in this Agreement and supersedes any prior understanding or agreement, oral or written, with respect to such matters. This Agreement may not be amended or modified except by a writing duly executed by the Parties.

(b) **Binding Effect.** This Agreement will bind and inure to the benefit of each of the Parties and their respective successors in interest. Except as expressly provided, this Agreement is not for the benefit of any person or entity not a party to this Agreement.

(c) **Governing Law; Interpretation.** This Agreement will be governed by and interpreted in accordance with the laws of the State of Illinois, without reference to its choice-of-law principles. In the language of this Agreement, the singular and plural numbers, and the masculine, feminine and neuter genders, include the others; and the conjunctive "and" and the disjunctive "or" include the other. Section, paragraph, and other captions or headings are used in this Agreement as a matter of convenience and for reference—and do not affect the interpretation of this Agreement.

(d) **Jurisdiction.** With respect to any matters involving enforcement or interpretation of this Agreement, the Parties submit to jurisdiction in the State of Illinois.

(e) **Ambiguities or Uncertainties.** This Agreement (and any ambiguities or uncertainties) will be equally and fairly interpreted without reference to the identity of the party preparing this Agreement, on the express understanding and agreement that the Parties participated equally in the negotiation and preparation of the Agreement—or have had equal opportunity to do so. Each of the Parties hereby waives the benefit of any statute or principle of law that provides that, in cases of uncertainty, language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

(f) **Severability.** If any provision of this Agreement is held to be invalid or unenforceable under applicable law, that provision will be reformed and construed consistently with applicable law as nearly as possible to reflect the original intentions of this Agreement; and in any event, the remaining provisions of this Agreement will remain in full force and effect.

(g) **Waiver.** Any waiver of any breach or covenant of this Agreement must be in a writing duly executed by the Party waiving the breach. A waiver of a breach or covenant of this Agreement may not be construed to be a waiver of any succeeding breach or any other covenant, unless specifically and explicitly stated in the waiver.

(h) **Counterparts; Signatures.** This Agreement may be executed in counterparts, each of which may be deemed an original and all of which together will constitute

a single instrument. In the execution of this Agreement and delivery of signatures, facsimile or scanned/.PDF signatures will be treated as having the same effect as original signatures.

IN WITNESS WHEREOF, the Parties to this Agreement execute this Agreement as of the date and year written below.

BLUE CROSS AND BLUE SHIELD ASSOCIATION

Signature: _____
William Breskin
Vice President, Deputy General Counsel and
Assistant Corporate Secretary

Date: _____ July _____, 2011 _____

UHS OF DELAWARE, INC.

Signature: _____
Matthew D. Klein
Vice President and General Counsel

Date: _____ July _____, 2011 _____

UHS OF TEXOMA, INC.

Signature: _____
Matthew D. Klein
Vice President and General Counsel

Date: _____ July _____, 2011 _____

UNIVERSAL HEALTH SERVICES, INC.

Signature: _____
Matthew D. Klein
Vice President and General Counsel

a single instrument. In the execution of this Agreement and delivery of signatures, facsimile or scanned/.PDF signatures will be treated as having the same effect as original signatures.

IN WITNESS WHEREOF, the Parties to this Agreement execute this Agreement as of the date and year written below.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION**

Signature: _____
William Breskin
Vice President, Deputy General Counsel and
Assistant Corporate Secretary

Date: _____July_____, 2011_____

**UHS OF DELAWARE, INC.**

Signature: _____
Matthew D. Klein
Vice President and General Counsel

Date: _____July___22____, 2011_____

**UHS OF TEXOMA, INC.**

Signature: _____
STEVE FILTON
Vice President

Date: _____July___22____, 2011_____

**UNIVERSAL HEALTH SERVICES, INC.**

Signature: _____
Matthew D. Klein
Vice President and General Counsel

SETTLEMENT AGREEMENT
CONFIDENTIAL

Page 9 of 12

31215131

Date: _____ July 22, 2011 _____

**TEXOMACARE**

Signature: _Ronald T. Seal_____

Name: _Ronald T. Seal_____

Title: _CEO_____

Date: _____ July 22, 2011 _____

# EXHIBIT A

## NEW COLOR FOR TEXOMA CROSS

(See immediately following page.)





BLACK
C-0 M-0 Y-0 K-100

PMS 194
C 0 M 100 Y 64 K 33





PMS 262
C-45 M-100 Y-0 K-55

PMS 194
C 0 M-100 Y-64 K 33

# EXHIBIT B

## ALLOWED PHASE-OUT PERIODS

All listed phase-out periods run from the Effective Date of the Agreement.

| Category | Item | Allowed Phase-Out Period |
|---|---|---|
| Stationery | Business cards, letterhead, envelopes, notecards | 1 year |
| Signage | All locations | 1 year |
| Banners | Old TMC banners (we've moved) | 9 months |
| | Old TMC removal of stained glass | 6 months |
| | TMC logo flags | 1 year |
| | Outpatient Rehab banners | 6 months |
| HR | Employee nametags (w/holders) | 6 months |
| | Plant Ops uniform hats | 2 years |
| | Physician labcoats | 1 year |
| | Physician scrubs | Until depleted |
| | Security officer patches | Until depleted |
| | Volunteer patches | Until depleted |
| Marketing | TMC backdrop | 6 months |
| | TMC mic flag | 6 months |
| | Podium sign | 6 months |
| | TMC display panels | 6 months |
| | Laminated logo info sheet | 3 months |
| | Posters - 7 x 2 big and 3 elevator | 3 months |
| | TMC Medical Supply tablecloth | 6 months |
| Brochures | Brochures | 1 year |
| Web | Web and other online or electronic displays | 3 months |
| Miscellaneous | All categories/items not listed above | 1 year |