IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UHS OF DELAWARE, INC.; UNIVERSAL HEALTH SERVICES, INC.; WELLINGTON REGIONAL MEDICAL CENTER, INCORPORATED; and DOEs 1-10, inclusive,<br><br>Defendants. | No. 12-cv-8196<br><br>Judge: Hon. Gary Feinerman |

## DEFENDANTS' MEMORANDUM OPPOSING PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER

Defendants Universal Health Services, Inc. ("UHS"), UHS of Delaware, Inc., and Wellington Regional Medical Center, Incorporated (sometimes collectively, the "UHS Defendants"), by counsel, submit this Memorandum Opposing Plaintiff's Emergency Motion for Protective Order (Plaintiff's "Motion").

### INTRODUCTION

Through its subsidiaries, UHS owns and operates 220 acute care hospitals, behavioral health centers, surgical hospitals, ambulatory surgery centers and radiation oncology centers located in 37 states, Washington, D.C., Puerto Rico and the U.S. Virgin Islands. Plaintiff and two of the UHS Defendants (UHS and its affiliate UHS of Delaware, Inc.) entered into a July 22, 2011 Settlement Agreement (the "Agreement") to resolve prior litigation before this court (*Blue Cross and Blue Shield Association v. UHS of Delaware, Inc., et al.*, Case No. 2009-cv-7935,

hereinafter the "Texoma Case"). The Agreement is at the very core of the case at bar, the primary basis for Plaintiff's claims and the exclusive basis for the UHS Defendants' counterclaim.

Plaintiff brought the Texoma Case to contest the rights of the UHS Defendants, UHS of Texoma, Inc., and TexomaCare (the "Texoma Defendants") to use a Greek/medical cross mark known as the "Texoma Cross" in connection with a Texas-based UHS hospital affiliate.[1] The Agreement required the Texoma Defendants to phase out their use of the Texoma Cross in the color blue, and to refrain from future use of blue Greek/medical cross marks. In consideration for these covenants, Plaintiff agreed to make two payments to the Texoma Defendants to defray their expenses in effectuating the Texoma Cross phase-out, the first in the amount of $100,000 and the second in the amount of $30,000. Plaintiff made the first of these payments, but refused to make the second payment. Plaintiff maintains that its payment is excused by claiming that the Agreement prohibited the UHS Defendants from using any mark consisting of any type of cross in blue, or any partial, fragmentary or incomplete depiction of any type of cross, in blue. Plaintiff claims that the UHS Defendants breached the expansive prohibition that Plaintiff alleges the Agreement contains. The UHS Defendants deny this breach, and claim that Plaintiff's default in paying the second installment due under the Agreement is a breach by Plaintiff. (*See*, Counterclaim, Doc. #34, and Exhibit 1 hereto, the UHS Defendants' August 2012 Notice of Default to Plaintiff.)

---

[1] The Texoma Cross is a Greek Cross. Plaintiff's blue cross mark is a Greek Cross. This is the Texoma Cross, as pictured in the Agreement:



2

Plaintiff's action significantly overreaches the Agreement's prohibition on the UHS Defendants' use of blue Greek/medical cross marks. Likewise, Plaintiff's Motion also overreaches the Agreement's confidentiality terms, extending them far beyond both the Agreement's words and the permissible scope of secrecy permitted in public litigation in this District and Circuit. The Motion should be denied because 1) the Agreement's confidentiality provisions are inapplicable to these enforcement proceedings; 2) Plaintiff waived any right to invoke the Agreement as a basis for keeping its terms secret in this litigation; 3) assuming, *arguendo*, that the Agreement entitled Plaintiff to notice of the UHS Defendants' intention to disclose its payment terms in these enforcement proceedings, the UHS Defendants gave Plaintiff such notice and Plaintiff knowingly elected to do nothing to prevent the disclosures it now, belated, seeks to bar; and 4) applicable Seventh Circuit precedent prohibits the secret litigation Plaintiff wishes to conduct.[2]

## ARGUMENT

"The general rule is that the record of judicial proceedings is public." *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002). The records of court proceedings often concern issues in which the public has an interest, and the public also cannot monitor judicial performance adequately if the records of judicial proceedings are secret. *Id.; citing Union Oil Co. v. Leavell*, 220 F.3d 567, 68 (7th Cir. 2000). Thus, any party seeking a protective order and/or to seal court

---

[2] Plaintiff's Motion demands that the UHS Defendants redact from public filings and/or re-file under seal, pleadings and exhibits that reference or cite to the very terms of the Agreement the UHS Defendants' counterclaim seeks to enforce. Specifically, Plaintiff requests that Counterclaim ¶ 12, Sentences 2 and 3; ¶ 17, first sentence, ¶¶ 's 13, 15, 20, 21, 23, and 25; First Prayer for Relief, as well as Sections 3 and 8 in the Agreement, attached as an exhibit to Defendants pleadings and motion be redacted from public filings. Plaintiff claims that it will be prejudiced if this information is revealed in a public filing, because its disclosure will make it more difficult for Plaintiff to settle other, unspecified claims. Presumably, what Plaintiff really means, is that it believes disclosure of the Agreement's payment terms may complicate Plaintiff's efforts to settle other claims on terms most advantageous to Plaintiff. However, Plaintiff's agenda concerning other claims is not a basis for a protective order, and fails to satisfy its weighty burden of proving why secrecy could be appropriate.

CHICAGO/#2474247.7

files has the burden to overcome the presumption that court records and pleadings are public by establishing why such protection is required. *In re Sprecht*, 622 F.3d 697, 701 (7th Cir. 2010). Unless there is a compelling interest in secrecy, as with true trade secrets, there is a strong presumption that judicial proceedings should remain open to the public. *Jessup*, 277 F.3d 926 at 928.

### A. The Agreement's Confidentiality Provision Does Not Apply to Enforcement Actions.

The confidentiality provisions of the Agreement (section 8) do not apply to enforcement actions, nor do they prohibit the UHS Defendants' pleadings' reference to the contract terms that Plaintiff breached. A "settlement is just another contract to be enforced in the usual way, that is, by a fresh suit." *Jessup*, 277 F.3d 926 at 929. The confidentiality provisions of a settlement agreement cannot prevent a litigant from properly enforcing its rights under the settlement. It is fundamental that for the UHS Defendants to properly allege a breach of contract claim, they must refer to the specific terms of the Agreement upon which their claim is based and allege facts demonstrating a breach. *See, Grabianski v. Bally Total Fitness Holding Corp.*, 891 F.Supp.2d 1036, 1046 (N.D. Ill. 2012) (finding plaintiff inadequately plead breach-of-contract claim by failing to specify which contract terms were breached); *See also Wigod v. Wells Fargo Bank, NA*, 673 F.3d 547, 560 (7th Cir. 2012) (the required elements of a breach of contract claim are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff, (5) breach, and (6) damages). Plaintiff would have the court believe that the UHS Defendants agreed not to state a cause of action in litigation to enforce their rights to payment. The UHS Defendants, however, did nothing of the kind.

As well, the pleadings stage of this case is only the first, by no means the last, stage at which the impracticability of Plaintiff's overreaching confidentiality claim is evident. It follows

4

from Plaintiff's sweeping misconstruction of Section 8 that Plaintiff must also claim that the Agreement requires all written discovery responses and responses to requests for admissions concerning the payment terms be filed, if at all, only under seal or in redacted form with separate, complete submissions to the court *in camera*; that the parties' summary judgment submissions be similarly strictly censored; that the court's own written decisions say nothing about the payment terms; and that the court close the courtroom during all pretrial hearings at which the Agreement's payment terms might be discussed and exclude the public even from trial proceedings all to maintain secrecy about Plaintiff's payment obligations (which total $130,000). The Agreement's confidentiality provisions, and Plaintiff's efforts to inflate them, should be considered in the light of the massive burdens, expenses and inconvenience that Plaintiff would impose on the court, the administration of justice in this case and the litigants, all in the supposed name of confidentiality.

Plaintiff also asserts that the UHS Defendants were required to give notice prior to disclosing certain "confidential" information in the Agreement. (*See* Agreement ¶ 8(b).) Plaintiff's interpretation of the notice provision is wrong. That notice provision applies only to third party requests for information such as subpoenas, or other disclosures "required by a court or similar tribunal" and *not* to enforcement actions between the parties. To read the Agreement's Section 8(b) notice provision as imposing an obligation on the UHS Defendants to give Plaintiff advance drafts of pleadings alleging a breach by Plaintiff or specific notice of its intent to file any such action, as Plaintiff seems to do, is tantamount to requiring that the UHS Defendants provide Plaintiff with their work product and legal strategy. For example, the decision when to file an action can be as significant as the substance of the litigation itself. In this case, BCBSA raced to the courthouse in Chicago without providing any notice of such an action to UHS to

secure a forum in Chicago when they feared an action being filed against them. Under BCBSA's interpretation, UHS would have been required to notify BCBSA of their intent to file before filing and relinquish the strategic advantage of unilaterally determining when and where to file an action. Neither party agreed to this, nor would any rational litigant so bind itself.

### B. Plaintiff Waived its Confidentiality Claim Under the Agreement.

Waiver is the voluntary and intentional relinquishment of a known right and may be implied by conduct of the party who is alleged to have waived a right. *See Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009) (finding that party relinquished right to repayment by failing to demand money already paid and object to services rendered). In correspondence dated July 18, 2012 the UHS Defendants made a request for the $30,000 that remained due and owing to UHS under the Agreement. *See* Exhibit 2. In August 2012, the UHS Defendants gave Plaintiff express, written notice that they considered Plaintiff in breach of the Agreement's payment terms (Exhibit 1). Armed with that knowledge, and aware to a certainty that the UHS Defendants would counterclaim for Plaintiff's breach of the Agreement, Plaintiff nevertheless filed its initial complaint under the Agreement in October 2012, and neither sought the UHS Defendants' consent to a protective order, nor applied to the court for entry of a protective order. Instead, Plaintiff waited fully nine months to seek a protective order. Throughout all of those nine months, Plaintiff had significantly more than the "sufficient time to object or file appropriate motions or requests, such as a motion for protective order" that Plaintiff now maintains was its due under Section 8(b). Yet Plaintiff did nothing.

These circumstances show that Plaintiff never considered the confidentiality provisions of Section 8(b) applicable to this enforcement action. They also demonstrate that Plaintiff knowingly waived the confidentiality claim that it has belatedly made. Plaintiff's decision to initiate an action under the Agreement, particularly after knowing to a certainty that the UHS

6

Defendants would counterclaim for Plaintiff's breach of that Agreement, independently waived Plaintiff's confidentiality claims. Plaintiff's 9-month wait after suing to claim confidentiality also unmistakably waived any rights to secretly litigate the UHS Defendants' counterclaim, even assuming, *arguendo,* that the Agreement's confidentiality provisions applied to enforcement litigation between the parties.

The undisputed facts show that Plaintiff waived notice and the right to invoke confidentiality under Section 8 of the Agreement, and that, for all practical purposes, the UHS Defendants fully and materially complied with the notice requirement that Plaintiff incorrectly claims applies to these enforcement proceedings. Plaintiff's protestations now that despite its actions, it remains entitled to a secret, federal tribunal for these enforcement proceedings are both too little and too late. Plaintiff is not entitled to cloak in perpetual secrecy the breach by Plaintiff that the UHS Defendants allege here.

### C. Seventh Circuit Authority Prohibits the Secret Enforcement Proceedings Plaintiff Seeks.

The Seventh Circuit law of open court proceedings and records must be deemed a part of the Agreement, which was negotiated and made, and is now being enforced, in this court and Circuit. *See WM. J. Lemp Brewing Co. v. Ems Brewing Co.*, 164 F.3d 290, 293 (7th Cir. 1947). That law does not permit the scope of confidentiality sought by Plaintiff under the Agreement, as there must be a "compelling interest in secrecy," such as trade secrets or national security to warrant sealing a court document or record, such as the Agreement in dispute here and the UHS Defendants' pleadings. *Jessup,* 277 F.3d 926 at 928 (finding third party was entitled to overcome seal on settlement agreement, though all parties to the agreement requested it remain sealed). "A settlement agreement is a contract, and when parties to a contract ask a court to interpret and enforce their agreement, the contract enters the record of the case and thus becomes available to

the public, unless it contains information such as trade secrets that may legitimately be kept confidential." *Herrnreiter v. Chicago Housing Authority*, 281 F.3d 634, 636-37 (7th Cir. 2002). In *Herrnreiter*, the court found that the "CHA's desire to keep the amount of its payment quiet (perhaps to avoid looking like an easy mark, and thus drawing more suits) is not nearly on a par with national security and trade secret information." *Id.* Similarly, Plaintiff cites no legally-recognized compelling interest in secrecy when it vaguely relates a professed concern that revealing the Agreement's payment terms will impede Plaintiff's alleged efforts to settle other, unspecified claims. Plaintiff makes no effort to justify the claim of secrecy, thus, the Agreement cannot be interpreted to surpass the scope of secrecy allowable under governing Seventh Circuit precedent. *See e.g. Baxter Intern. Inc. v. Abbot Laboratories*, 297 F.3d 544, 547 (7th Cir. 2002) (denying agreed motion to seal notwithstanding parties' joint "assertion that confidentiality promotes business interests, and noting "many litigants would like to keep confidential...the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed").

Plaintiff was on notice of this clear and consistent Seventh Circuit precedent prohibiting secret-but-public litigation when Plaintiff chose to file this suit for an alleged breach of the same Agreement under which Plaintiff knew the UHS Defendants would counterclaim. In so doing, Plaintiff voluntarily made the Agreement part of a public record. Plaintiff knew or should have known that the public record could not be cleansed of those portions of the Agreement that Plaintiff would prefer to both disregard and to keep private. The parties cannot be assumed to have undertaken unenforceable and overbroad confidentiality duties under Section 8, whose actual terms do not reflect that they did so. Plaintiff is overreaching the scope of confidentiality

under the Agreement's language and under applicable Seventh Circuit precedent. Therefore, Plaintiff's Motion should be denied.

### D. Plaintiff Relinquished its Claim to Confidentiality by Failing to Include an Arbitration Clause in the Agreement.

Plaintiff is a highly sophisticated and aggressive litigant. If Plaintiff wanted to resolve this dispute confidentially, it could and would have not only sought a protective order with its case filing, but it would also have included an arbitration clause in the Agreement. "People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public officials." Judicial proceedings are public rather than private property, and this justifies making records and decisions as open as possible. *Union Oil Co. v. Leavell*, 220 F.3d 567, 568 (7th Cir. 2000); *see also Baxter Intern. Inc.*, 297 F.3d 544 at 547 ("businesses that fear harm from disclosure required by the rules of conduct of litigation often agree to arbitrate"). Knowing the Seventh Circuit's limitations on secret proceedings, Plaintiff could and would have insisted upon mandatory arbitration to resolve enforcement disputes if Plaintiff had really bargained for the secrecy to which it now insists it is entitled. The fact that there is no arbitration provision in the Agreement demonstrates that Plaintiff never intended the Agreement to bar enforcement proceedings disclosing the very contract terms to be enforced.

### CONCLUSION

For the reasons set forth above, The UHS Defendants respectfully request that the Court 1) deny Plaintiff's Emergency Motion for a Protective order; (2) order that Defendants' Motion to Dismiss including all exhibits thereto, Defendants' Memorandum in Support of its Motion to Dismiss and all exhibits thereto and Defendants' Answer and Counterclaim and all exhibits

9

thereto be unsealed; and (3) grant such other, further or additional relief in the UHS Defendants' favor and against the Plaintiff as the Court deems fair, just and equitable in the premises.

Dated: July 30, 2013                                        Respectfully submitted,


                                                            UHS OF DELAWARE, INC.; UNIVERSAL
                                                            HEALTH SERVICES, INC.; WELLINGTON
                                                            REGIONAL MEDICAL CENTER,
                                                            INCORPORATED



                                                            By:/s/ Nicholas Anaclerio
                                                                 One of Its Attorneys


Nicholas Anaclerio
Robert Rigg
Aruna Subramanian
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois  60601-1003
T:  +1 (312) 609-7500

10

CHICAGO/#2474247.7

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OPPOSING PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Susan G. O'Neill
Hanson Bridgett LLP
425 Market Street
26th Floor
San Francisco, CA 94105

on July 30, 2013.

/s/ Nicholas Anaclerio

# EXHIBIT 1

Office of the General Counsel

August 22, 2012

***CONFIDENTIAL COMMUNICATION***
***FOR PURPOSES OF SETTLEMENT & COMPROMISE ONLY***
***INADMISSIBLE IN ANY PROCEEDING***

Roger C. Wilson, Esquire
Senior Vice President
General Counsel
BlueCross BlueShield Association
225 North Michigan Avenue
Chicago, IL 60601

      Re:    *BlueCross and BlueShield Association v. UHS of Delaware, Inc., et al,*
              U.S. Dist. Ct., N.D. Ill. Case No. 1:09-CV-07935
              Settlement Agreement

Dear Mr. Wilson:

      This letter is written in response to yours dated August 2, 2012.

      UHS is not in breach of its Settlement Agreement with BlueCross BlueShield Association ("BCBS") and BCBS is not justified in refusing payment of the remaining $30,000 due and owing to UHS under the Settlement Agreement. BCBS's contentions to the contrary in both respects are mistaken.

      As stated in our July 18, 2012 letter, BCBS is incorrect in claiming that the Settlement Agreement encompassed logos or designs that BCBS now maintains which include partial or incomplete crosses (hereinafter "Alleged Partial Crosses" or the "Alleged Partial Cross"). As you know, UHS refused to sign the post-agreement "affirmation" requested by BCBS's outside counsel – Hanson Bridgett – in their June 29, 2012 letter since that request was an unjustified attempt on BCBS's behalf to secure an amendment to the Settlement Agreement and indeed served only as BCBS's admission that Alleged Partial Crosses or designs containing Alleged Partial Crosses were never contemplated by, nor encompassed in, the Settlement Agreement. Further, such designs do not infringe in any reasoned or rational manner on BlueCross' cross design or use thereof.

      The Settlement Agreement defines the specific type of cross to which the restrictions or registration conditions apply. *See Section 1(i) of the Settlement Agreement – Texoma Cross – depicting a complete 4-sided cross.* The Settlement Agreement does not state, or imply that the provisions of Section 2(a)(2) and 2(a)(3), upon which BCBS incorrectly relies, apply to Alleged Partial Crosses, designs or other logos that contain Alleged Partial Crosses. In fact, the heading of Section 2(a)(2) & (3) upon which BCBS mistakenly relies is entitled "2. Texoma Cross." Accordingly, the provisions of Section 2(a)(2) and 2(a)(3) do not apply to the designs at issue and UHS is in full compliance with the Settlement Agreement relating to the use or registration of such marks and otherwise.

      As to the incorrect BCBS claim relating to the Wellington Regional Medical Center logo, Wellington Regional has been continuously using this design in the color blue for almost 20 years. BCBS has or should have been aware that Wellington Regional has been using that specific logo in the color blue and has never raised any objection. If BCBS took issue with Wellington Regional's use of that design in the color blue, or had ever considered Alleged Partial Crosses to be in dispute between BCBS and UHS or Wellington Regional either generally or in connection with the referenced Settlement Agreement, BCBS and its counsel should and certainly would have expressly raised the subject in prior settlement discussions concerning the Texoma mark(s), and/or in separate demands, claims or suits, which BCBS could have asserted long ago. BCBS's failure to make any such demands or claims in the past two decades is acquiescence in Wellington Regional's use of their logo in the color blue as well as an acknowledgment of the propriety of Wellington Regional's use of that design. As you know, BCBS made no mention of, much less objections to, any Alleged Partial Cross design or logo in the Parties' settlement discussions.

      As to Application Serial No. 85/601,244, the design also is not a cross as defined by or covered under the Settlement Agreement; the provisions of Section 2(a)(3) of the Settlement Agreement are inapplicable; and so UHS will not, therefore, exclude the color blue in its application. Notwithstanding, as you know from examining the design itself, the Alleged Partial Cross within the Valley star (which bears no similarity to the Texoma Cross or to BCBS's marks), is colorless as it is a shadow design of the Alleged Partial Cross within a star. Accordingly, the Alleged Partial Cross in that trademark will not have any color.

      Finally, BCBS's incorrect assertions of breach in your August 2 letter do not constitute valid bases for BCBS's non-payment of the final $30,000 due UHS under the Settlement Agreement. Specifically, UHS has fully satisfied all requisite conditions for receipt of that payment in accordance with Section 3(b) of the Settlement Agreement. Specifically, the changes to the Texoma Cross have been completed and certification of same has been provided to BCBS. Accordingly, UHS requests BCBS's payment of the remaining $30,000 due and owing UHS from BCBS under the Settlement Agreement without further delay.

      UHS and BCBS prudently resolved the referenced trademark dispute relating to Texoma in a rational and business-like manner. I suggest that before either of our companies further escalates this written exchange, it would be wise for us to confer directly again.

                                      Sincerely,

                                      Matthew Klein
                                      Vice President and General Counsel

4848-1643-7264.1

# EXHIBIT 2



**UHS**
Office of the General Counsel

Matthew D. Klein
Vice President and
General Counsel

Universal Health Services, Inc.
UHS of Delaware, Inc.

367 South Gulph Road
P.O. Box 61558
King of Prussia
Pennsylvania
19406-0958

July 18, 2012

Roger G. Wilson, Esquire
Senior Vice President
General Counsel
BlueCross BlueShield Association
225 North Michigan Avenue
Chicago, IL 60601

Re: BlueCross and BlueShield Association v. UHS of Delaware, Inc.
Settlement Agreement

Dear Mr. Wilson:

This letter is written in response to yours dated July 17, 2012.

As referenced in the June 29, 2012 letter from your counsel, Garner Weng, to Tom Bergert, the filing date of application Serial No. 85/269,641 for the Rehabilitation and Sports Medicine Center of Manatee Health System mark ("the '641 application") pre-dates our settlement agreement ("Agreement") and, as such, is not subject to the provisions of Section 2(a)(3) of the Agreement. Execution of the acknowledgement on the June 29th letter is not a prerequisite to satisfy our conditions precedent for recovery of the remaining $30,000 due under the Agreement. However, in order to assuage any concerns you may have, we are willing to affirm in this correspondence that we will not violate the provisions of Section 2(a)(2) of the Agreement [in the event, contrary to our belief, that they are deemed to apply to this mark,] and are not utilizing or intending to utilize the color blue in the partial cross design portion of this mark.

With respect to application Serial No. 85/609,101 ("the '101 application"), UHS already owns incontestable U.S. Registration No. 2,969,247 for another Desert Springs mark containing the same partial cross design as the '101 application, and UHS has decided to abandon the '101 application for other business reasons. We have already filed the paperwork to withdraw the '101 application. Despite this, UHS contends that the marks in the '101 and '641 applications do not come within the confines or parameters of the Agreement and this letter should not be construed as an admission of such. Specifically, the designs in these marks are not "crosses" as compared to either the BCBS or Texoma Cross which was the subject of the litigation and resulting Agreement. Notwithstanding, as a further assurance, we affirm that we will not violate the provisions of Section 2(a)(2) of the Agreement [in the event, contrary to our belief, that they are deemed to apply to this mark,] and are not utilizing or intending to utilize the color blue in the partial cross design portion of this mark.

By virtue of the fact that UHS is in compliance with conditions precedent and/or subsequent of the Settlement Agreement, request is made again for payment of the remaining $30,000 due and owing. Your cooperation is greatly appreciated.

Sincerely,

Matthew Klein
Vice President and General Counsel

cc: Bryan Sugar, Esq.